IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.  3:16-cv-178 |
| SUNOCO PIPELINE L.P. | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, the United States of America, by authority of the Attorney General of the United States and through its undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

### NATURE OF THE ACTION

1.   This is a civil action against Sunoco Pipeline L.P. ("Sunoco" or "Defendant") related to Defendant's unlawful discharges of oil from two separate Sunoco owned and operated facilities into nearby navigable waters and adjoining shorelines.  The first discharge occurred between August 20 and August 26, 2009, and it involved an internal corrosion leak in a suction line connected to an aboveground containment tank at Defendant's Barbers Hill Station near Mont Belvieu, Chambers County, Texas (the "Barbers Hill Station").  The oil left the tank, accumulated within the tank's secondary containment berm, penetrated a containment wall in the facility, and then traveled overland before entering and impacting nearby waterways.  The second discharge occurred on or about February 14, 2011, and it involved a leaking intra-facility

transfer pipe at Defendant's Cromwell Tank Farm, located near Cromwell, Seminole County, Oklahoma (the "Cromwell Tank Farm").  The oil flowed from the pipe, into a small drainage ditch inside the facility, and then migrated off the property before entering and impacting nearby waterways, land, and wildlife habitat.

2.   As a result of the two discharges discussed in Paragraph 1, the United States alleges violations of and seeks relief under the Clean Water Act ("CWA"), 33 U.S.C. § 1251, et seq., as amended by the Oil Pollution Act of 1990 ("OPA"), Pub. L. 101-380.  For each oil spill, the United States alleges two causes of action:

    a.   Claims for civil penalties under CWA Section 311(b)(7)(A) and (D), 33 U.S.C.  § 1321(b)(7)(A) and (D); and

    b.   Claims for injunctive relief under CWA Section 309(b), 33 U.S.C. § 1319(b).

### JURISDICTION, AUTHORITY AND VENUE

3.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1345 and 1355, and Sections 309(b), 311(b)(7)(E) and 311(n) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and 1321(n).  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1395(a), as Defendant is a Texas corporation that does business in this judicial district and a substantial part of the events or omissions giving rise to the United States' claims occurred in this district.

4.   Notice of the commencement of this action was provided to the States of Texas and Oklahoma as required by Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## THE PARTIES

5.   Plaintiff United States of America is acting at the request of EPA.  EPA was among several federal and state agencies to respond to both the Barbers Hill Station and Cromwell Tank Farm discharges, and EPA conducted some initial response activities.  EPA has authority to enforce the provisions of the CWA.

6.   Defendant is a limited partnership organized under the laws of Texas that conducts business in the State of Texas.  Its principal office is located in Philadelphia, Pennsylvania, and its Registered Agent is located in Dallas, Texas.  Defendant is the owner and operator of both the Barbers Hill Station and the Cromwell Tank Farm.

## STATUTORY BACKGROUND

### A.  Prohibition of Discharges

#### a.   CWA Section 301

7.   Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits "the discharge of any pollutant, by any person," except as authorized by and in compliance with other sections of the CWA.

8.   Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" or "discharge of pollutants" to mean "any addition of any pollutant to navigable waters from any point source."

9.   Crude oil is a "pollutant" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(6).

10. Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters" to mean "waters of the United States."

11. Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" to mean "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

### b. CWA Section 311

12. Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), prohibits the "discharge of oil or hazardous substances into or upon the navigable waters of the United States [or] adjoining shorelines…in such quantities as may be harmful as determined by the President under paragraph (4) of this subsection…."

13. Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2), defines "discharge" to include "spilling, leaking, pumping, pouring, emitting, emptying or dumping…."

14. Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1), defines "oil" to mean "oil of any kind or in any form, including, but not limited to, petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil."

15. Pursuant to Section 311(b)(4) of the CWA, 33 U.S.C. § 1321(b)(4), EPA acting through its Presidentially delegated authority determined that "discharges of oil that violate applicable water quality standards, or cause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines, or cause a sludge or emulsion to be deposited beneath the surface of the water or adjoining shorelines" are quantities that are harmful under Section 311(b)(3).  Executive Order No. 11735, 38 Fed. Reg. 21243 (Aug. 7, 1973); 40 C.F.R. § 110.3.

**B.**      **Authority to Seek Penalties for Oil Discharges**

16. Under Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), "[a] person who is the owner, operator, or person in charge of any vessel, onshore facility, or offshore facility from which oil or a hazardous substance is discharged in violation of [311(b)(3)], shall be subject to a civil penalty in an amount up to $25,000 per day of violation or an amount up to $1,000 per barrel of oil…discharged."

17. Section 311(a)(7) of the CWA, 33 U.S.C. § 1321(a)(7), defines "person" to include "an individual, firm, corporation, association, and a partnership."

18. Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6) defines "owner or operator" to include "in the case of an onshore facility…any person owning or operating such onshore facility…."

19. Section 311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(1), defines "onshore facility" to include "any facility…of any kind located in, on, or under, any land within the United States other than submerged land."

20. Defendants are liable for civil penalties of up to $1,100 per barrel discharged under CWA Section 311(b)(7)(A), or, if is proved that the violations are the result of gross negligence or willful misconduct, not more than $4,300 per barrel discharged under Section 311(b)(7)(D).  See 40 C.F.R. § 19.4 (establishing, effective January 12, 2009, through December 6, 2013, that the per barrel civil penalty amounts were increased to the listed amounts by the Civil Monetary Penalty Inflation Adjustment Rule, Table 1).

C.      **Authority to Seek Injunctive Relief for Oil Discharges**

21. Section 309(a) of the CWA, 33 U.S.C. § 1319(a), authorizes the Administrator of the EPA to, *inter alia*, issue compliance orders for discharges of pollutants prohibited under Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

22. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the Administrator of the EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, for any violation for which the Administrator is authorized to issue a compliance order under Section 309(a).

## V. GENERAL ALLEGATIONS

**A. Sunoco Operations**

23. Defendant owns and operates crude oil pipelines in Texas and Oklahoma, approximately 7,034 miles as of August 30, 2012.  In this area, Defendant's pipelines are comprised of transmission lines, rural gathering lines, and associated idled pipe.  Pumping stations, valves, and collection tanks are also present along the pipeline.

24. Defendant's crude oil pipelines operating in Texas are named the "Texas Pipeline." Defendant's crude oil pipelines operating in Oklahoma are named the "Oklahoma Pipeline."

25. Defendant's Texas Pipeline and Oklahoma Pipeline are operated remotely from a centralized control room in Sugar Land, Texas ("Sugar Land Control Room"), which is run by personnel of a parent company working for and on behalf of Defendant.  In addition to serving as a central point of operations for Defendant's Texas and Oklahoma Pipelines, the Sugar Land Control Room also controls other primarily crude pipelines in which Sunoco affiliates have some ownership and/or operate by way of an operating agreement.

**B. Barbers Hill Station Spill**

26. Defendant owns and operates the Barbers Hill Station, which is part of Defendant's Texas Pipeline. The Barbers Hill Station is comprised of one breakout tank, Tank 1408, that is connected to the Texas Pipeline transmission line by buried incoming and outgoing suction lines. A "breakout tank" means a tank used to (a) relieve surges in a hazardous liquid pipeline system or (b) receive and store hazardous liquid transported by a pipeline for reinjection and continued transportation by pipeline. 49 C.F.R. § 195.2. The Station receives crude oil from various leases in the Cotton Lake oil field south of Mont Belvieu, Texas. Crude oil is gathered at the Barbers Hill Station and then pumped to Defendant's Liberty Station in Liberty, Texas. Pumping from Tank 1408 starts and stops automatically on a tank gauge that is controlled remotely by personnel at the Sugar Land Control Room.

27. Between August 20 and August 26, 2009, Tank 1408 at the Barbers Hill Station discharged 2,446 barrels of crude oil when a rupture occurred in its outgoing suction line.

28. Defendant reported to EPA that the immediate cause of the discharge that occurred between August 20 and August 26, 2009, was internal corrosion on the suction line at Tank 1408.

29. Of the 2,446 barrels discharged from the line, approximately 609 barrels were later recovered within Tank 1408's secondary containment area using vacuum trucks. The remaining approximately 1,837 barrels of the crude oil were released from Tank 1408 to the surrounding surface and sub-surface soils and into a drainage canal that borders the Barbers Hill Station to the south, from which it flowed a total of 2.5 miles through an unnamed tributary into Smith Gully and westward downstream under Highway 146 before it entered Cedar Bayou. Smith Gully and Cedar Bayou are perennial tributaries that flow to the Houston Ship Channel and Galveston Bay.

30. Smith Gully and Cedar Bayou are "waters of the United States" within the meaning of CWA Section 502(7), 33 U.S.C. § 1362(7), and CWA Section 311, 33 U.S.C. § 1321.

31. At the times relevant to this Complaint, the Barbers Hill Station was an "onshore facility" within the meaning of CWA Section 311(a)(10), 33 U.S.C. § 1321(a)(10), and a "point source" within the meaning of CWA Section 502(14), 33 U.S.C. § 1362(14).

32. Between August 20, 2009 and August 26, 2009, Defendant "discharged" 2,446 barrels from the Barbers Hill Station within the meaning of CWA Section 311(a)(2), 33 U.S.C. § 1321(a)(2), and CWA Section 502(16), 33 U.S.C. § 1362(16).

33. The crude oil that was discharged from the Barbers Hill Station is "oil" within the meaning of CWA Section 311(a)(1), 33 U.S.C. § 1321(a)(1), and a "pollutant" within the meaning of CWA Section 502(6), 33 U.S.C. § 1362(6).

34. The crude oil that was discharged from the Station was in a quantity "as may be harmful as determined by the President" within the meaning of CWA Section 311(b)(3), 33 U.S.C. § 1362(b)(3), because the discharge was sufficient to and did cause a sheen or discoloration of receiving waters within the meaning of 40 C.F.R. § 110.3.

35. Defendant is an "owner [or] operator…of…[an] onshore facility…from which oil…[was] discharged" within the meaning of CWA Section 311(b)(7)(A) and (f)(2), 33 U.S.C. § 1321(b)(7)(A) and (f)(2), and a "person" within the meaning of CWA Sections 301(a), 311(a)(7) and 502(5), 33 U.S.C. §§ 1311(a), 1321(a)(7), 1362(5).

36. On August 24, 2009, Defendant received notification of the spill at Barbers Hill Station. Defendant's records, including communications to the Sugar Land Control Room, indicate that Tank 1408 began showing shortages beginning on August 20, 2009 and continuing at increasing levels through August 26, 2009.

37. Approximately 2.5 miles of Smith Gully and Cedar Bayou, including these waterways and land, were impacted by the oil spill. The immediate area of the spill is nonresidential, forested, and the surrounding area is primarily agricultural and industrial.

38. After the Barbers Hill Station discharge, Defendant's contractor conducted oil spill response and remediation activities overseen by federal and state agencies.

39. Recovery efforts of the spilled oil in the waterways were deemed complete as of September 4, 2009 by the Texas General Land Office, the state agency taking a lead oversight role for Defendant's response activities. Soil remediation was thereafter conducted under the oversight of the Texas Railroad Commission.

**C. Cromwell Tank Farm Spill**

40. Defendant owns and operates the Cromwell Tank Farm, which is part of Defendant's Oklahoma Pipeline. Cromwell Tank Farm receives crude oil from various leases through gathering lines in the Southern Oklahoma oil fields. Cromwell Tank Farm consists of two storage tanks (the remaining of what once totaled nine tanks), numbers 231 and 232 ("Tanks 231 and 232"), that gather and store oil before it is sent down the Oklahoma Pipeline by a nearby pumping station to Defendant's Seminole Station. Tanks 231 and 232 are connected to each other by buried intrafacility transfer pipes. Cromwell Tank Farm is an unmanned facility with tank gauges and alarms that are monitored and controlled remotely by personnel at the Sugar Land Control Room.

41. On or about February 14, 2011, at least 1,742 barrels of crude oil discharged from one of Defendant's intrafacility pipes at the Cromwell Tank Farm. Defendant reported to EPA that the immediate cause of the discharge was internal corrosion on the 6" intrafacility transfer pipe.

42. At or around the time the pipe failure set forth in Paragraph 41 occurred, Defendant's facility drawings inaccurately represented the subject pipe as an orphan pipe – designated as "idled and purged" – that had supposedly been sealed off from other active intrafacility piping, located between Tanks 231 and 232, as a result of valve closures.

43. At some time prior to the pipe failure set forth in Paragraph 41, oil flowed from the active intrafacility piping connected to Tanks 231 and 232 and into the so-called orphan pipe. Defendant's maps and records inaccurately designated the line as "idled and purged," but it was, in fact, not completely sealed off from the active intrafacility transfer lines and oil flowed through the open connecting valve.

44. Approximately 1,742 barrels of the crude oil were released from the Cromwell Tank Farm to the surrounding surface and sub-surface soils, from which it moved into a nearby unnamed tributary and traveled for 2.5 miles into Little Wewoka Creek.  Little Wewoka Creek is a perennial tributary that flows to Lake Eufaula and the Canadian River.

45. Little Wewoka Creek is a "waters of the United States" within the meaning of CWA Section 502(7), 33 U.S.C. § 1362(7), and CWA Section 311, 33 U.S.C. § 1321.

46. At the times relevant to this Complaint, the Cromwell Tank Farm was an "onshore facility" within the meaning of CWA Section 311(a)(10), 33 U.S.C. § 1321(a)(10), and a "point source" within the meaning of CWA Section 502(14), 33 U.S.C. § 1362(14).

47. On or about February 14, 2011, Defendant "discharged" 1,742 barrels of oil from the Cromwell Tank Farm within the meaning of CWA Section 311(a)(2), 33 U.S.C. § 1321(a)(2), and CWA Section 502(16), 33 U.S.C. § 1362(16).

48. The crude oil that was discharged from the Cromwell Tank Farm is "oil" within the meaning of CWA Section 311(a)(1), 33 U.S.C. § 1321(a)(1), and a "pollutant" within the meaning of CWA Section 502(6), 33 U.S.C. § 1362(6).

49. The crude oil that was discharged from the Cromwell Tank Farm was in a quantity "as may be harmful as determined by the President" within the meaning of CWA Section 311(b)(3), 33 U.S.C. § 1362(b)(3), because the discharge was sufficient to and did cause a sheen or discoloration of receiving waters within the meaning of 40 C.F.R. § 110.3.

50. Defendant is an "owner [or] operator…of…[an] onshore facility…from which oil…[was] discharged" within the meaning of CWA Section 311(b)(7)(A) and (f), 33 U.S.C. § 1321(b)(7)(A) and (f)(2), and a "person" within the meaning of CWA Sections 301(a), 311(a)(7) and 502(5), 33 U.S.C. §§ 1311(a), 1321(a)(7), 1362(5).

51. On February 14, 2011, Defendant personnel were present at the Cromwell Tank Farm for unrelated maintenance when they observed oil-stained grass and brush and reported it to the Sugar Land Control Room.  That day, the Sugar Land Control Room remotely shut down operations at the Cromwell Tank Farm and its connection to the Oklahoma Pipeline, and Defendant personnel present on site that day manually shut the valves connecting Tanks 231 and 232 to intrafacility piping, and they also implemented the Incident Command System.

52. The crude oil discharged from the Cromwell Tank Farm impacted nearby waterways and land surrounding the unnamed tributary and Little Wewoka Creek, including land that belongs to two Native American tribes and provides habitat for an endangered species.

53. The oil spill response and cleanup began on February 14, 2011, and continued through February 28, 2011, when it was determined that all readily recoverable crude oil/sheen had been

removed from the waterway. Site restoration was completed under the supervision of the Oklahoma Corporation Commission, including excavation, fill and grading, and reseeding.

## VI. CLAIMS FOR RELIEF

### A. First Claim for Relief: Civil Penalties under Section 311(b) of the CWA for Barbers Hill Station Discharge

54. Paragraphs 1 through 39 are realleged and incorporated herein by reference.

55. The Barbers Hill Station crude oil discharge that occurred between August 20 and August 26, 2009, is a violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3)

56. Defendant, as the owner and operator of the Barbers Hill Station at the time of the oil spill, is liable pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4, for civil penalties not to exceed $1,100 for each barrel of oil discharged or, if it is established that the violations are the result of gross negligence or willful misconduct, a penalty of up to $4,300 per barrel discharged under Section 311(b)(7)(D).

### B. Second Claim for Relief: Civil Penalties under Section 311(b) of the CWA for Cromwell Tank Farm Discharge

57. Paragraphs 1 through 25 and 40 through 53 are realleged and incorporated herein by reference.

58. The Cromwell Tank Farm crude oil discharge that occurred on or about February 14, 2011 is a violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3

59. Defendant, as the owner and operator of the Cromwell Tank Farm at the time of the oil spill, is liable pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4, for civil penalties not to exceed $1,100 for each barrel of oil discharged or, if it is

established that the violations are the result of gross negligence or willful misconduct, a penalty of up to $4,300 per barrel discharged under Section 311(b)(7)(D).

**C.  Third Claim for Relief: Injunctive Relief under Section 309 of the CWA as to the Barbers Hill Station Discharge**

60. Paragraphs 1 through 39 are realleged and incorporated herein by reference.

61. The Barbers Hill Station crude oil discharge that occurred between August 20 and August 26, 2009 violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a).  Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Defendant should be required to undertake appropriate action to prevent future oil spills into waters of the United States from its Texas Pipeline, generally, and the Barbers Hill Station, in particular, and to otherwise achieve compliance with the CWA.

**D.  Fourth Claim for Relief: Injunctive Relief under Section 309 of the CWA as to the Cromwell Tank Farm Discharge**

62. Paragraphs 1 through 25 and 40 through 53 are realleged and incorporated herein by reference.

63. The Cromwell Tank Farm crude oil discharge that occurred on or about February 14, 2011, violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a).  Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Defendant should be required to undertake appropriate action to prevent future oil spills into waters of the United States from its Oklahoma Pipeline, generally, and the Cromwell Tank Farm, in particular, and to otherwise achieve compliance with the CWA..

## VII. PRAYER FOR RELIEF

WHEREFORE, United States respectfully requests that this Court:

A.  Enter a judgment that Defendant is liable to the United States for civil penalties pursuant to CWA Section 311(b) and assess civil penalties of up to $1,100 per barrel of oil

discharged pursuant to Section 311(b)(7)(A) for each of the two spill events alleged in this Complaint, or, if it is established that either or both of the violations are the result of gross negligence or willful misconduct, assess a civil penalty of up to $4,300 per barrel discharged under Section 311(b)(7)(D) for the respective violation(s);

B.  Enter a judgment that Defendant is liable to the United States for all appropriate injunctive relief pursuant to Sections 301(a) and 309(b) of the CWA and award injunctive relief against Defendant requiring Defendant to take all appropriate action to prevent future discharges of oil from the Sunoco Pipeline system, the Barbers Hill Station, and the Cromwell Tank Farm into navigable waters of the United States;

C.  Grant the United States such other and further relief as the Court deems just and proper.

Respectfully submitted,

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

ROBYN E. HANSON
Attorney-in-charge
N.Y. Bar #4462339
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, CO, 80202
Ph: (303) 844-1558
Fax: (303) 844-1350

PAULO PALUGOD
N.Y. Bar #5047964
Special Assistant and Counsel
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611

Washington, D.C. 20044-7611
Ph: (202) 514-3581
Fax: (202) 616-6584

KENNETH MAGIDSON
United States Attorney
Southern District of Texas

KEITH EDWARD WYATT
Texas Bar No. #22092900
Federal Bar No. 3480
Assistant United States Attorney
Southern District of Texas
1000 Louisiana Street, Suite 2300
Houston, TX 77002
Ph: (713) 567-9713
Fax: (713) 718-3303

OF COUNSEL:

AMY L. SALINAS
U.S. Environmental Protection Agency Region 6
1445 Ross Avenue
Dallas, Texas 75202-2733

KELLY K. BRANTER
U.S. Environmental Protection Agency
Office of Civil Enforcement
Water Enforcement Division
1200 Pennsylvania Ave, NW
MC 2243A, WJC South Room 3120A
Washington, DC 20460