United States District Court
Southern District of Texas

**ENTERED**

October 13, 2016

David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Civil No. _3:16-cv-00178_____ |
| | ) |
| SUNOCO PIPELINE L.P., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CONSENT DECREE

TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ............................................................................... 4
II.     APPLICABILITY................................................................................................... 4
III.    DEFINITIONS....................................................................................................... 9
IV.     CIVIL PENALTY................................................................................................. 14
V.      INJUNCTIVE RELIEF......................................................................................... 15

A.    Internal Corrosion                          15

B.    Dead-Leg Piping                             19

C.    Sugar Land Control Room Procedures         20

VI.     ABANDONMENT ............................................................................................... 22
VII.    REPORTING REQUIREMENTS ........................................................................ 23
VIII.   STIPULATED PENALTIES ............................................................................... 26
IX.     FORCE MAJEURE ............................................................................................. 29
X.      DISPUTE RESOLUTION ................................................................................... 31
XI.     INFORMATION COLLECTION AND RETENTION ....................................... 33
XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS............................ 35
XIII.   COSTS ................................................................................................................. 37
XIV.    NOTICES.............................................................................................................. 37
XV.     EFFECTIVE DATE.............................................................................................. 39
XVI.    RETENTION OF JURISDICTION...................................................................... 39
XVII.   MODIFICATION ................................................................................................. 39
XVIII.  TERMINATION................................................................................................... 40
XIX.    PUBLIC PARTICIPATION ................................................................................ 42
XX.     SIGNATORIES/SERVICE.................................................................................. 43
XXI.    INTEGRATION ................................................................................................... 43
XXII.   APPENDICES ..................................................................................................... 44
XXIII.  FINAL JUDGMENT ........................................................................................... 44

A.     Plaintiff, United States of America, on behalf of the United States Environmental

Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent

Decree, alleging that Defendant, Sunoco Pipeline L.P., violated Sections 301(a) and 311(b)(3) of

the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311(a) and 1321(b)(3), in connection with two oil

spills.

B.     The Complaint against Defendant alleges that Defendant discharged crude oil from its

Barbers Hill Station near Mont Belvieu, Chambers County, Texas (the "Barbers Hill Station")

between August 20 and 26, 2009, and from its Cromwell Tank Farm located near Cromwell,

Seminole County, Oklahoma (the "Cromwell Tank Farm") between February 9 and 14, 2011.

For each oil spill, the Complaint seeks civil penalties under CWA Section 311(b)(7)(A), 33

U.S.C. § 1321(b)(7)(A), and asserts claims for injunctive relief under CWA Section 309(b), 33

U.S.C. § 1319(b).

C.     Defendant does not admit any fact, law, or liability to the United States arising out of the

transactions or occurrences alleged in the Complaint.

D.     In addition to committing to complete the Injunctive Relief of this Consent Decree,

Defendant represents that it has taken the following steps prior to the Effective Date of this

Consent Decree to prevent future unauthorized discharges of crude oil from Defendant's Texas

Pipeline and Oklahoma Pipeline (collectively, "Defendant's Pipelines"):

1.     began conducting assessments at Covered Facilities in 2011 to identify upgrades, asset

replacements or removals, or other prevention or mitigation measures to reduce any risks of

spills and recommendations for Covered Facility improvements;

2.     established a formalized multi-year Facility Integrity Program ("FIP") in 2011,

applicable to Covered Facilities within Defendant's Pipelines, to assess active and idle Line

1

Pipe for any risks of failures that could cause a discharge of oil and Defendant has supplied revised versions of the FIP to EPA prior to the Effective Date of this Decree;

3.      established a Dead-Leg Removal and Line Flushing Program ("Dead-Leg Program") in 2011 to document, track, and manage Dead-Leg Piping in Covered Facilities and to identify and reduce any risks presented when crude oil in Defendant's Pipelines remains in a stagnant state with little or no flow;

4.      removed, drained, and/or purged an estimated 18 miles of Dead-Leg Pipe in Defendant's Pipelines prior to establishing its formalized FIP and Dead-Leg Program in 2011;

5.      assessed some Covered Facilities in 2012 and thereafter, conducting over 21 formal assessments to date and, as a result, Defendant has removed, drained, and/or purged at least 11 miles of Dead Leg Pipe since implementation of the FIP and Dead-Leg Program;

6.      established a "Pipeline Internal Corrosion Guideline" in 2013 to define a company process for evaluating internal corrosion, identifying and implementing mitigation actions, and periodically reevaluating any risks and mitigation actions on or for the Line Pipe outside the Covered Facilities in Defendant's Pipelines;

7.      hired an Internal Corrosion Specialist in 2013 to oversee an internal corrosion program and implement the Pipeline Internal Corrosion Guideline;

8.      updated its leak detection Sugar Land Control Room procedures in 2009 to require Pipeline Controllers at the end of their daily shift to investigate any alarms on Defendant's Supervisory Control and Data Acquisition (SCADA) system, to implement hourly line balancing, and to log any discrepancy in volumes of crude oil transported between Covered Facilities (metered over/short) greater than 5%;

2

9.      further updated its leak detection Sugar Land Control Room procedures in 2011 to include a shut-down procedure after 3 hours of any unexplained over/short volume discrepancies;

10.     selected and began installing a pipeline integrity monitoring software called LeakWarn in 2015 on Defendant's Trunk Lines to provide Sugar Land Control Room operators with continuous, real-time data on crude oil being transported during both steady state and transient conditions and to alert them to losses in Defendant's Pipelines by transmitting warning alarms to the SCADA system for audible alarming;

11.     established a schedule to finalize implementation of the LeakWarn system on Defendant's Trunk Lines after the Effective Date of this Consent Decree;

12.     hired a third party auditor, Pipeline Performance Group (PPG), to conduct an assessment of Defendant's current Sugar Land Control Room leak detection procedures for compliance with Pipeline Safety Laws.  On or about April 8, 2015, PPG issued a report on its completed assessment titled, "Review of Sugar Land Control Center Practices and Comparison to PHMSA Control Room Management Regulations ("PPG Report"), and this report included recommendations.

E.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.  JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 301(a), 309(b), 311(b)(7)(E), and 311(n) of the CWA, 33 U.S.C. §§ 1311(a), 1319(b), 1321(b)(7)(E), and 1321(n), and over the Parties.  Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because Defendant is a Texas corporation that does business in this judicial district and a substantial part of the events or omissions giving rise to the United States' claims occurred in this district.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

2.     For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 309(b) and 311(b)(7)(A) of the CWA.

## II.  APPLICABILITY

3.     The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.     No transfer of ownership or operation of any Covered Facility or Like-Kind Facility, in whole or in part, or the Sugar Land Control Room, shall relieve Defendant of its obligation to ensure that the terms of this Decree are implemented, unless Defendant fully satisfies the requirements of either Subparagraph (a) (Transfer After Completion of Applicable Injunctive Relief) or Subparagraph (b) (Assumption of Obligations by Substituted Transferee) of this Paragraph.  Any attempt to transfer ownership or operation of any Covered Facility or Like-

4

Kind Facility, in whole or in part, or the Sugar Land Control Room without complying with this Paragraph constitutes a violation of this Decree:

        a.        <u>Transfer After Completion of Applicable Injunctive Relief</u>.

            (1)        If Defendant completes all injunctive relief required by this Decree applicable to a particular Covered Facility or Like-Kind Facility, (as provided in Section V.A and V.B (Injunctive Relief)) and/or the Sugar Land Control Room (as provided in Section V.C (Injunctive Relief)) and subsequently seeks to transfer ownership or operation of such Covered Facility, Like-Kind Facility and/or the Sugar Land Control Room, then, at least 30 Days prior to such prospective transfer, Defendant shall:

                (a)        notify EPA of such prospective transfer, pursuant to Section XIV (Notices);

                (b)        provide a certification to EPA, as set forth in Paragraph 32 and using the form provided in Appendix B, that Defendant has completed all injunctive relief required by this Consent Decree applicable to such Covered Facility, Like-Kind Facility, and/or the Sugar Land Control Room that is subject to the noticed prospective transfer; and

                (c)        provide to the prospective transferee any applicable Post-Assessment Action Plan prepared pursuant to Paragraph 14.

            (2)        If EPA does not provide a written notice to Defendant objecting to Defendant's proposed transfer within 30 Days of the date that Defendant provides the notification and certification required by Subparagraph (a)(1), then Defendant

5

may thereafter transfer the so-noticed Covered Facility, Like-Kind Facility, and/or the Sugar Land Control Room, and the transfer shall effect Partial Termination under Paragraph 82 with respect to the Covered Facility, Like-Kind Facility, or the Sugar Land Control Room.  If EPA determines that the certification submitted by Defendant pursuant to Subparagraph (a)(1)(b) is inaccurate or false in any way, then, within 30 Days of the date that Defendant provided the notification and certification required by Subparagraph (a)(1), it may provide a written notice to Defendant objecting to the proposed transfer and stating the basis therefor.  If EPA provides such a written notice to Defendant objecting to the proposed transfer, then Defendant shall be prohibited from making the proposed transfer under this Subparagraph, subject to Defendant's right to invoke Dispute Resolution pursuant to Section X (Dispute Resolution) or to submit a new notice and certification pursuant to Subparagraph (a)(1) above that addresses the basis for EPA's objection (in which event EPA retains full rights to object to the transfer as provided in this Subparagraph).

b.      Assumption of Obligations by Substituted Transferee.

(1)      If Defendant has not completed all injunctive relief required by this Decree at a Covered Facility, Like-Kind Facility, and/or the Sugar Land Control Room and seeks to transfer ownership or operation of such Covered Facility, Like-Kind Facility and/or the Sugar Land Control Room, then Defendant may request EPA approval to substitute the transferee for Defendant as a Party to this Decree with respect to the Covered Facility, Like-Kind Facility, and/or the Sugar Land Control Room which is the subject of the proposed transfer and proceed

6

with the transfer pursuant to this Paragraph.  When requesting such a transfer under this Subparagraph, Defendant shall:

 (a) notify the United States of such prospective transfer, including with such notice a copy of the proposed written transfer agreement, pursuant to Section XIV (Notices);

 (b) provide a statement to EPA, certified as set forth in Paragraph 32, that:

  1) Defendant has not completed all injunctive relief required by this Consent Decree at such Covered Facility, Like-Kind Facility, and/or the Sugar Land Control Room (as applicable to the transfer); and

  2) Defendant has provided a copy of this Consent Decree to the proposed transferee;

 (c) provide a written statement from the proposed transferee of such Covered Facility, Like-Kind Facility, or the Sugar Land Control Room (as applicable) agreeing to undertake all remaining obligations required by this Decree applicable to such Covered Facility, Like-Kind Facility, or the Sugar Land Control Room and to be substituted for the Defendant as a Party under the Decree upon transfer, thus becoming bound by the applicable terms thereof; and

 (d) request EPA approval to substitute the prospective transferee and proceed with the prospective transfer.

(2)     Within 60 Days of the United States' receipt of Defendant's

request pursuant to Subparagraph 4.b(1) the United States shall provide written

notice of its decision to Defendant, pursuant to Section XIV (Notices).  If the

United States approves the requested transfer, Defendant shall prepare all

necessary papers to be filed jointly with the United States to modify the Consent

Decree to add the transferee to the Consent Decree as the Party bound to

undertake any remaining obligations required by this Consent Decree with respect

to the transferred Covered Facility, Like-Kind Facility, and/or the Sugar Land

Control Room. Upon modification of the Consent Decree, Defendant may

proceed with the transfer.  Upon any transfer authorized pursuant to this

Subparagraph, Defendant shall, through the transfer, be relieved of any continuing

obligation to ensure that the terms of this Decree are implemented with respect to

such Covered Facility, Like-Kind Facility, and/or the Sugar Land Control Room,

and the transferee will be bound by the terms of this Consent Decree to undertake

any remaining obligations required by this Decree with respect to the transferred

Covered Facility, Like-Kind Facility, and/or the Sugar Land Control Room. Any

decision by the United States to deny approval for a transfer pursuant to this

Subparagraph shall not be subject to judicial review.

5.      Defendant shall provide a copy of this Consent Decree to all officers, Employees,

and agents whose duties might reasonably include compliance with any provision of this Decree,

as well as to any contractor retained to perform work required under this Consent Decree.

Alternatively, Defendant may fulfill the obligation in the preceding sentence by providing the

foregoing persons with instruction and briefing concerning portions of this Consent Decree for

which they have implementation responsibilities.  To the extent a third party is retained by

Defendant to perform any tasks which are the subject of this Consent Decree, Defendant shall

condition any such contract upon performance of the work in conformity with the terms of this

Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a

defense the failure by any of its officers, directors, Employees, agents, or contractors to take any

actions necessary to comply with the provisions of this Consent Decree.

### III.    DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the CWA or in regulations

promulgated pursuant to the CWA shall have the meanings assigned to them in the CWA or such

regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are

used in this Consent Decree, the following definitions shall apply:

a.      "Abandoned" shall mean, as provided in 49 C.F.R. § 195.2, permanently

removed from service.

b.      "Applicable Industry Standards" shall mean practice consistent with

reasonable and prudent operations in the crude oil pipeline industry, including

compliance with applicable law and, as applicable, adherence to American Petroleum

Institute ("API") or other applicable generally accepted industry standards and

recommended practices pertaining to the construction, maintenance, and/or operation of

crude oil pipelines;

c.      "Breakout Tank" shall mean, as provided in 49 C.F.R. § 195.2, a tank used

to (a) relieve surges in a Hazardous Liquid pipeline system or (b) receive and store

Hazardous Liquid transported by a pipeline for reinjection and continued transportation

9

by pipeline;

    d.    "Complaint" shall mean the complaint filed by the United States in this action, concurrently with this Decree;

    e.    "Component" shall mean, as provided in 49 C.F.R. § 195.2, any part of a Pipeline which may be subjected to pump pressure including, but not limited to, pipe, valves, elbows, tees, flanges, and closures;

    f.    "Consent Decree" or "Decree" shall mean this Decree;

    g.    "Covered Facility" or "Covered Facilities" shall mean the facilities listed in Appendix A attached hereto owned or operated by Defendant and physically located within Texas or Oklahoma and connected to Defendant's Pipelines;

    h.    "Date of Lodging" shall mean the date upon which the Consent Decree is lodged with the Court pursuant to 28 C.F.R. § 50.7;

    i.    "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall instead run until the close of business of the next business day;

    j.    "Dead-Leg Pipe" or "Dead-Leg Piping" shall mean, as provided by API 2611, the internal areas of a piping system that are isolated by valves or locations having no flow for more than 3 consecutive months;

    k.    "Defendant" shall mean Sunoco Pipeline L.P.;

    l.    "Defendant's Pipelines" shall mean the Texas Pipeline and the Oklahoma Pipeline;

    m.    "Delegated States" shall mean the States of Texas and Oklahoma;

n.      "Discharges" shall mean the crude oil discharges commencing from

Defendant's Barbers Hill Station between August 20 and 26, 2009, and from Defendant's

Cromwell Tank Farm between February 9 and 14, 2011;

o.      "DOT" shall mean the U.S. Department of Transportation and any of its

successor departments or agencies;

p.      "EPA" shall mean the U.S. Environmental Protection Agency and any of

its successor departments or agencies;

q.      "Effective Date" shall have the definition provided in Section XV

(Effective Date);

r.      "Employees" shall mean all employees of Defendant and companies

affiliated with Defendant, including contractors and sub-contractors, acting on behalf of

Defendant at Defendant's Covered Facilities and the Sugar Land Control Room and

engaged in activities to comply with this Consent Decree;

s.      "Hazardous Liquid" for purposes of this Consent Decree shall mean crude

oil;

t.      "In-Station Piping" shall have the meaning of "in-plant piping system" as

defined in 49 C.F.R. § 195.2, which is piping that is located on the grounds of a plant and

used to transfer Hazardous Liquid between plant facilities and a pipeline or other mode of

transportation;

u.      "Like-Kind Facilities" shall mean pipeline facilities acquired after the

Date of Lodging whereby oil is received by pipeline, stored, and pumped back into a

pipeline and that: (1) are owned or operated by Defendant after the Date of Lodging

through the date of termination of this Consent Decree with respect to the affected Like-

11

Kind Facility, (2) are physically located within Texas or Oklahoma, and (3) are physically connected to Defendant's Pipelines;

      v.     "Non-destructive examination" or "NDE" shall include one or more of the following examination techniques: magnetic particle examination; liquid penetrant examination; ultrasonic examination; radiography; eddy current examination; visual examination; metallographic examination; acoustic emission; Conventional Guided Wave Testing; Short Range Guided Wave Testing; ILI Robotics; Conventional and Automated UT Solutions; Corrosion Mapping Tools; and/or similar technologies that are later approved by written agreement of the Parties pursuant to Section XVII (Modification) of this Decree;

      w.     "Oklahoma Pipeline" shall mean all Pipelines operated by Defendant in its crude oil operations in the State of Oklahoma as identified on Appendix A of this Decree;

      x.     "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

      y.     "Parties" shall mean the United States and Defendant;

      z.     "PHMSA" shall mean the Pipeline and Hazardous Materials Safety Administration of DOT and any of its successor departments or agencies;

      aa.     "Pipe" or "Line Pipe" shall mean, as provided in 49 C.F.R. § 195.2, a tube, usually cylindrical, of Defendant's Pipelines through which a Hazardous Liquid...flows from one point to another;

      bb.     "Pipeline" or "Pipelines" or "Pipeline System" shall mean, as provided in 49 C.F.R. § 195.2, all parts of a pipeline facility through which a Hazardous Liquid moves in transportation, including, but not limited to, Line Pipe, valves, and other

appurtenances connected to Line Pipe, pumping units, fabricated assemblies associated with pumping units, metering and delivery stations and fabricated assemblies therein, and Breakout Tanks;

      cc.    "Pipeline Safety Laws" shall mean the Pipeline Safety Act 49 U.S.C. §§ 60101, *et al.* and PHMSA regulations promulgated at 49 C.F.R. Part 195 and all applicable state regulations implementing PHMSA's pipeline safety program;

      dd.    "Section" shall mean a portion of this Decree identified by a Roman numeral;

      ee.    "Sugar Land Control Room" shall mean the operations center staffed by Employees in Sugar Land, Texas, who are responsible for remotely monitoring and controlling a pipeline facility along Defendant's Pipelines, as "control room" and "pipeline facility" are defined by 49 C.F.R. §195.2 and as otherwise limited by this Consent Decree;

      ff.    "Subparagraph" shall mean a portion of this Consent Decree identified by a lower case alphabetic letter, contained within a Paragraph of this Consent Decree;

      gg.    "Subsection" shall mean a portion of this Consent Decree identified by an upper case alphabetic letter, contained within a Section of this Consent Decree;

      hh.    "Supervisory Control and Data Acquisition" or "SCADA system" means, as defined by 49 C.F.R. §195.2, a computer-based system or systems used by a controller in a control room that collects and displays information about a pipeline facility and has the ability to send commands back to the pipeline facility;

      ii.    "Texas Pipeline" shall mean all Pipelines operated by Defendant in its crude oil operations in the State of Texas as identified on Appendix A of this Decree;

jj.     "Trunk Line" shall mean the Line Pipe and associated Components that transport crude oil in Defendant's Pipelines between Covered Facilities;

kk.     "United States" shall mean the United States of America, acting on behalf of EPA.

## IV.     CIVIL PENALTY

8.      Within 30 Days after the Effective Date, Defendant shall pay the sum of eight hundred fifty thousand dollars ($850,000) as a civil penalty, together with interest accruing from the Date of Lodging, at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging.

9.      Defendant shall pay the civil penalty due at http://pay.gov by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Southern District of Texas after the Effective Date.  Such monies are to be deposited in the Oil Spill Liability Trust Fund.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Kevin Dunleavy, Chief Counsel
> 3801 West Chester Pike
> Newtown Square, Pennsylvania 19073
> kevin.dunleavy@sunoco.com

on behalf of Defendant.  Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XIV (Notices).

Consent Decree in <u>United States v. Sunoco Pipeline L.P.</u>

10.    At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to this Consent Decree in this case, and shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-10074, to the United States in accordance with Section XIV of this Decree (Notices) and to:

> Stephen C. Ewart
> National Pollution Funds Center
> 4200 Wilson Boulevard, Suite 1000
> Arlington, VA 22203-1804

> Chief
> United States Coast Guard
> Office of Claims and Litigation CG-0945
> US Coast Guard Mailstop 7213
> 2703 Martin Luther King Jr. Avenue, SE
> Washington, DC 20593-7213

11.    Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal income tax.

## V.    INJUNCTIVE RELIEF

12.    In addition to all other applicable requirements, Defendant shall comply with the requirements in this Section until termination of this Consent Decree and with the objective of preventing future unauthorized discharges of crude oil from Defendant's Pipelines in violation of the CWA.

### A.    **Internal Corrosion**

13.    No later than 3 years from the Effective Date, Defendant shall complete at all Covered Facilities a one-time Non-destructive examination (NDE) on In-Station Piping located therein that Defendant identifies, on a spot basis, as having a risk of internal corrosion, consistent with Applicable Industry Standards and in accordance with the following:

15

a.      for purposes of this Section of this Consent Decree, in Defendant's evaluation of whether In-Station Piping within Covered Facilities has a "risk of internal corrosion," Defendant shall consider, at a minimum and consistent with Applicable Industry Standards, the following criteria: proximity to Waters of the U.S., Line Pipe elevation and/or grade, Line Pipe wall thickness, susceptibility to internal corrosion evidenced by any historical accidents or releases, topography, and/or the size of the facility;

b.      Defendant shall identify and prioritize In-Station Piping at Covered Facilities upon which Defendant will conduct NDEs, and Defendant shall develop a priority schedule for conducting NDEs based on the risk priority assigned by Defendant;

c.      Defendant shall identify, consistent with Applicable Industry Standards, any internal corrosion that has occurred by evaluating the remaining wall thickness and strength of such In-Station Piping, on a spot basis, using one or more different NDE techniques described in Section III (Definitions), provided that visual inspection cannot be the sole NDE technique applied at any point on such Line Pipe tested, to assess the condition of In-Station Piping at Covered Facilities; and

d.      Defendant shall submit to EPA semi-annual reports, as required by Section VII (Reporting Requirements), listing all Covered Facilities at which Defendant has completed NDEs pursuant to this Paragraph during the preceding Reporting Period, as that term is defined in Paragraph 27.

14.     After Defendant conducts an NDE at any Covered Facility as provided in Paragraph 13, Defendant shall develop a written post-assessment action plan (PAAP) for that

16

Covered Facility consistent with Applicable Industry Standards and in accordance with the following:

        a.      each PAAP shall set forth how Defendant will address any identified internal corrosion risks to In-Station Piping at each Covered Facility, based on the results of the NDE for such Covered Facility;

        b.      each PAAP shall include, at minimum, the following:

        (1)      a summary of the NDE results indicating the spot location tested, specifying the NDE technique(s) that were applied at each location in the Covered Facility, and describing the remaining wall thickness and strength in that location of the Covered Facility;

        (2)      a description of whether corrective action is needed to prevent pipeline ruptures caused by internal corrosion at each location tested, including whether Defendant determines that:

        (a)      repairs or replacements of Line Pipe are needed within the Covered Facility;

        (b)      mitigation, inhibitors, or other internal corrosion prevention measures are needed to reduce internal corrosion of Line Pipe within the Covered Facility; and/or

        (c)      continued monitoring and an inspection schedule is needed to monitor the In-Station Piping for further internal corrosion and/or evaluate the effectiveness of any mitigation, inhibitors, or other internal corrosion prevention measures Defendant may implement;

        (3)      a schedule for implementation of the corrective action measures

identified in Paragraph 14.b(2), based on Defendant's risk-based prioritization of the necessary corrective action;

c.      each PAAP for a Covered Facility shall be completed within 60 Days of completion of the NDE at such Covered Facility.  The date of completion of the NDE provided in this Paragraph shall be deemed the date that Defendant finalizes a written report of data or other empirical results of the NDE on the In-Station Piping at such Covered Facility;

d.      Defendant shall submit to EPA semi-annual reports listing each Covered Facility where PAAPs were completed during the applicable Reporting Period.  For each completed PAAP listed, Defendant shall summarize the PAAP by describing the NDE results, any corrective action needed, and schedule for implementation of corrective action measures at the respective Covered Facility; and

e.      Defendant shall submit to EPA, upon request, a copy of any completed PAAPs for any Covered Facility within 30 Days of Defendant's receipt of EPA's written request, in accordance with Section XIV (Notices).

15.      For any crude oil facilities acquired by Defendant after the Date of Lodging which are Like-Kind Facilities, Defendant shall notify EPA of the acquisition pursuant to Section XIV (Notices) within 10 Days of the acquisition and also report the acquisition to EPA in the semi-annual report provided in accordance with Section VII (Reporting Requirements) of this Decree.

16.      All injunctive relief requirements of this Subsection (Subsection A: Internal Corrosion) that apply to Covered Facilities shall likewise apply to Like-Kind Facilities upon Defendant's acquisition of Like-Kind Facilities pursuant to Paragraph 15.

18

17.     Defendant's reports provided under this Subsection, and Defendant's identification of In-Station Piping, risk priority, and the schedule for conducting NDEs, shall be final and do not require EPA review and approval.

**B.     Dead-Leg Piping**

18.     Defendant shall continue to implement its Dead-Leg Removal and Line Flushing Program ("Dead-Leg Program") at all Covered Facilities, and in doing so, shall also complete the requirements of this Subsection.  Any further developments to Defendant's Dead-Leg Program shall comply with the requirements of this Subsection, shall be consistent with Applicable Industry Standards, and shall not require EPA review and approval.

19.     No later than 3 years from the Effective Date, Defendant shall update its inventory of existing Dead-Leg Piping (Defendant's Existing Inventory of Dead-Leg Piping) at each Covered Facility by developing field-verified diagrams of all such Line Pipe and indicating the existence of Dead-Leg Piping at each Covered Facility to create a revised inventory of existing Dead-Leg Piping at each Covered Facility (Defendant's Revised Inventory of Dead-Leg Piping).  No later than 3 years and 30 Days from the Effective Date, Defendant shall submit a copy of Defendant's Revised Inventory of Dead-Leg Piping for all Covered Facilities to EPA, pursuant to Section XIV (Notices).  Defendant shall design the diagrams required under this Paragraph to:

        a.     map out all existing Pipe in Covered Facilities,

        b.     identify any Dead-Leg Piping that was not previously identified in Defendant's Existing Inventory of Dead-Leg Piping by:

            (1)     reviewing all maps, diagrams, and other documents in Defendant's possession,

19

(2)      conducting interviews of relevant personnel in each Covered

Facility, and

(3)      reviewing physical indicia of the presence of Dead-Leg Piping in

each Covered Facility.

c.      provide, either on the diagrams or in an attached document, a description

of Defendant's past actions or future plans to remove any Pipe, including but not limited

to, listing scheduled Dead-Leg Pipe removal actions and/or target dates for future

removal actions; and

d.      provide, either on the diagram itself or in an attached document, a

description of Defendant's past actions or future plans to flush, purge, isolate, or

otherwise maintain any Dead-Leg Piping that Defendant decides to preserve for future

use, rather than remove, including but not limited to listing scheduled actions, target

dates, and frequency intervals of planned ongoing actions to maintain such Line Pipe.

20.      All injunctive relief requirements of this Subsection (Subsection B: Dead-Leg

Piping) that apply to Covered Facilities shall likewise apply to Like-Kind Facilities upon

Defendant's acquisition of Like-Kind Facilities pursuant to Paragraph 15.

21.      Defendant's Revised Inventory of Dead-Leg Piping provided under this

Subsection shall be final and shall not require EPA review and approval.

**C.      <u>Sugar Land Control Room Procedures</u>**

22.      <u>Sugar Land Control Room Audit and Final PPG Report</u>: Utilizing the findings of

the PPG Report, Defendant shall complete the following:

a.      no later than the Effective Date, Defendant shall provide a one-time

certification to EPA, in the form set forth in Paragraph 32, that all Employees who work

20

in its Sugar Land Control Room have completed all PHMSA training and Defendant's control room management (CRM) training;

b.      no later than the Effective Date, Defendant shall provide a one-time certification to EPA, in the form set forth in Paragraph 32, summarizing the measures undertaken by Defendant to transfer and/or exchange knowledge and/or procedures learned by control room operators at Defendant's other control room(s) to control room operators at the Sugar Land Control Room.  The certification shall also include confirmation that all operators at the Sugar Land Control Room have been trained and tested on LeakWarn and confirmation that Defendant's knowledge, experience, training, and processes developed from implementing LeakWarn at other control room(s) prior to the Effective Date of this Consent Decree has been shared with control room operators at the Sugar Land Control Room;

c.      no later than 30 Days after the Effective Date, Defendant shall prepare and provide to EPA a one-time final report that summarizes Defendant's response to the PPG Report's recommendations, including listing which recommendations it accepted and how it acted on them, and which recommendations it decided not to accept and why Defendant deemed acting on the recommendations unnecessary;

d.      no later than 90 Days after the Effective Date, PPG shall conduct a one-time supplemental assessment of Defendant's Sugar Land Control Room alarm threshold leak detection limits, and issue a Supplemental Report ("Supplemental Report") describing its assessment and reasoning for the threshold leak detection limits; and

e.      no later than 30 Days after receipt of the Supplemental Report, Defendant shall provide to EPA a report that summarizes Defendant's response to the Supplemental

Report's recommendations, including listing which recommendations it accepted and how it acted on them, and which recommendations it decided not to accept and why Defendant deemed the recommendations unnecessary.

Defendant's reports and one-time certifications provided under this Paragraph shall be final and shall not require EPA review and approval.

23.   Third-Party Auditor:

a.   If PPG becomes unable or unwilling to perform or complete the duties provided herein, or for other good cause, Defendant shall notify EPA that Defendant proposes a candidate with comparable qualifications and experience as a substitute third-party auditor and shall identify the proposed candidate.  Within 30 Days of Defendant's notification to EPA of its candidate(s), EPA shall accept reasonable substitute candidate(s), or, if EPA determines that Defendant's candidates are not reasonable substitutes, EPA shall notify Defendant in writing of EPA's objections and whether Defendant shall propose alternative substitute(s).

b.   PPG or its substitute shall be made available to consult with EPA at any time prior to the report that Defendant provides to EPA under Paragraph 22.e upon EPA's request within a reasonable time and upon reasonable notice.

c.   Defendant shall not be bound by the statements, conclusions, or opinions of PPG or its substitute.

VI.   ABANDONMENT

24.   A Covered Facility or Like-Kind Facility is considered to be Abandoned for purposes of this Consent Decree on the date that Defendant executes an abandonment

22

certification that includes the certification set forth in Paragraph 32, states the date of execution, and reports that:

        a.      Defendant has Abandoned such Covered Facility or Like-Kind Facility in compliance with Pipeline Safety Laws; and

        b.      for all In-Station Piping in the Covered Facility or Like-Kind Facility, Defendant has removed all liquids from In-Station Piping, disconnected In-Station Piping from in-service piping, blanked off or blind flanged In-Station Piping, and labeled In-Station Piping as out of service.

25.     If a Covered Facility or Like-Kind Facility is Abandoned pursuant to this Section, then the requirements in Section V (Injunctive Relief) of this Consent Decree shall no longer apply as to that Covered Facility or Like-Kind Facility as of the date that Defendant executes the abandonment certification in compliance with Paragraph 24.  Pursuant to Paragraph 27.g, Defendant shall provide any abandonment certification executed under this Section to EPA as part of the semi-annual reporting requirement of this Consent Decree.

26.     Defendant's abandonment certifications executed in compliance with Paragraph 24 of this Section shall be final and do not require EPA review and approval.

VII.    REPORTING REQUIREMENTS

27.     Defendant shall submit to EPA semi-annual reports for every 6 month period from the Effective Date of this Decree until termination of this Decree pursuant to Section XVIII (Termination) (every "Reporting Period").  Defendant shall submit each semi-annual report to EPA via certified mail within 30 Days after the expiration of the applicable Reporting Period. The reports shall include:

        a.      a listing of all Covered Facilities and any Like-Kind Facilities at which

23

Defendant has completed NDEs during the Reporting Period as required by Paragraph 13.d;

b.    a summary of the PAAPs for each of the Covered Facilities and any Like-Kind Facilities that were completed in the preceding Reporting Period as required by Paragraph 14.d;

c.    a comprehensive list of all of Defendant's Covered Facilities and any Like-Kind Facilities, and an updated list that identifies any Covered Facilities or Like-Kind Facilities transferred, under Paragraph 4, or Like-Kind Facilities acquired, under Paragraph 15, during the Reporting Period, if any modifications occur during the Reporting Period;

d.    a report of any changes to Defendant's Dead Leg Program that occurred during the Reporting Period, developed in accordance with Paragraph 18;

e.    a listing of all Covered Facilities and any Like-Kind Facilities at which Defendant has completed the inventory, diagrams, and any additional documents required by Paragraph 19;

f.    completion report(s), certified in the form provided in Appendix B and completing all the entries in Appendix B designated as applicable requirements, if Defendant contends that it has completed all injunctive relief required under Section V (Injunctive Relief) as applicable to a particular Covered Facility, Like-Kind Facility and/or the Sugar Land Control Room during the Reporting Period;

g.    any abandonment certification(s) that Defendant executed in compliance with Paragraph 24 during the Reporting Period, if Defendant contends that any Covered Facilities or Like-Kind Facilities have been Abandoned pursuant to Section VI; and

24

h.    a description of any non-compliance with the requirements of this Consent Decree that occurred during the Reporting Period and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize the recurrence of such violation.

28.    Defendant's certified completion reports submitted in compliance with Paragraph 27.f of this Section shall be final and do not require EPA review and approval.

29.    If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall report to the United States, pursuant to Section XIV(Notices), such violation and its likely duration, in writing, within 10 Days of the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section IX (Force Majeure).

30.    Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

31.     All reports submitted under this Section shall be submitted to the persons designated in Section XIV (Notices).

32.     Each report submitted by Defendant under this Section shall be signed by an official of Defendant and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

33.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CWA or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

34.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

### VIII.    STIPULATED PENALTIES

35.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force

Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any report or schedule required to be submitted by this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

36.     <u>Late Payment of Civil Penalty</u>.  If Defendant fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $2,500 per Day for each Day that the payment is late.

37.     <u>Injunctive Relief</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified under Section V (Injunctive Relief):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $3,000 | 31st day and beyond |

38.     <u>Reporting Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VII:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $350 | 1st through 14th day |
| $750 | 15th through 30th day |
| $1,250 | 31st day and beyond |

39.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

27

40.     Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand unless otherwise provided in this Decree.

41.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to it under this Consent Decree.

42.     Stipulated penalties shall continue to accrue as provided in Paragraph 39, during any Dispute Resolution pursuant to Section X (Dispute Resolution), but need not be paid until the following:

        a.     if the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the date the agreement is effective of the agreement or the receipt of EPA's decision or order;

        b.     if the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in Subparagraph c, below; or

        c.     if any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

43.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9 and 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

44.     If Defendant fails to pay stipulated penalties according to the terms of this

Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in

28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall

be construed to limit the United States from seeking any remedy otherwise provided by law for

Defendant's failure to pay any stipulated penalties.

45.     Subject to the provisions of Section XII (Effect of Settlement/Reservation of

Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any

other rights, remedies, or sanctions available to the United States for Defendant's violation of

this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a

violation of the CWA, Defendant shall be allowed a credit, for any stipulated penalties paid,

against any statutory penalties imposed for such violation.

## IX.     FORCE MAJEURE

46.     "Force Majeure," for purposes of this Consent Decree, is defined as any event

arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of

Defendant's contractors, that delays or prevents the performance of any obligation under this

Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that

Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate

any potential Force Majeure event and best efforts to address the effects of any potential Force

Majeure event (a) as it is occurring and (b) after it has occurred, such that the delay is minimized.

Force Majeure does not include Defendant's financial inability to perform any obligation under

this Consent Decree.

47.     If any event occurs or has occurred that may delay the performance of any

obligation under this Consent Decree, whether or not caused by a Force Majeure event,

Defendant shall provide notice orally or by electronic or facsimile transmission to EPA, in accordance with Section XIV (Notices) within 72 hours of when Defendant first knew that the event might cause a delay.  Within 7 Days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

48.     If EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will timely notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

49.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will timely notify Defendant in writing of its decision.

50.     If Defendant elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 46 and 47.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.     DISPUTE RESOLUTION

51.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  In an action by the United States to enforce any obligation of Defendant arising under this Decree, Defendant may not raise any issue or defense that could have been, but was not, raised in Dispute Resolution under this Section.

52.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations,

then the position advanced by the United States shall be considered binding unless, within 20 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

53.     Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

54.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

55.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of this Consent Decree.

56.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

57.     <u>Standard of Review</u>. In any dispute brought under Paragraph 53, Defendant shall bear the burden of demonstrating that its position complies with and furthers the objective of this Consent Decree and that it is entitled to relief according to applicable principles of law.  The Parties reserve the right to argue as to the applicable standard of review for any such dispute.

58.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, pursuant to Paragraph 39, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 42.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

XI.     INFORMATION COLLECTION AND RETENTION

59.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any Covered Facility, Like-Kind Facility, and the Sugar Land Control Room under this Consent Decree, at all reasonable times, upon presentation of credentials, and in accordance with EPA Health and Safety Policies to:

a.      monitor the progress of Injunctive Relief required under this Consent Decree;

b.      verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

33

        c.      obtain documentary evidence, including photographs and similar data; and

        d.      assess Defendant's compliance with this Consent Decree.

60.    Until 3 years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement of Defendant shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information within Defendant's custody, possession, or control and required to be maintained under this Paragraph.

61.    Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents,

records, or other information created or generated pursuant to the requirement of this Consent Decree to engage PPG under Section V.C shall be withheld on grounds of privilege.

62.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

63.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

64.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging.

65.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CWA or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 64. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Covered Facilities and the Sugar Land Control Room, whether related to the alleged violations addressed in this Consent Decree or otherwise.

66.     PHMSA and the Delegated States retain jurisdiction over enforcement of its Pipeline Safety Laws and nothing in this Consent Decree shall prohibit PHMSA or the Delegated States from bringing an action for claims under its statutory authority.  This Consent Decree does not settle or offset any claims arising from Pipeline Safety Laws involving the Covered Facilities and Discharges, or otherwise affect PHMSA's authority or the Delegated States' authority to pursue judicial or administrative actions and penalty assessments.

67.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Covered Facilities, or Defendant's violations alleged in the Complaint, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 64.

68.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, 33 U.S.C. § 1251, *et seq.*, or with any other provisions of federal, State, or local laws, regulations, or permits.

36

69.    This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law, including but not limited to 33 U.S.C. § 1365(b)(1)(B) and 42 U.S.C. § 7604(b)(1)(B).

70.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party who is not a party to this Consent Decree.

71.    Defendant hereby covenants not to sue and agrees not to assert any claims related to the Discharges, or response activities in connection with the Discharges, against the United States pursuant to the CWA, Oil Pollution Act ("OPA"), or any other state or federal law or regulation for acts or omissions through the Date of Lodging of this Consent Decree.  Defendant further covenants not to sue and agrees not to assert any direct or indirect claim for reimbursement from the Oil Spill Liability Trust Fund or pursuant to any other provision of law for the Discharges.

## XIII.    COSTS

72.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIV.    NOTICES

73.    Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

37

As to the United States by email:    eescdcopy.enrd@usdoj.gov
Re: DJ # 90-5-1-1-10074

As to the United States by mail:    EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DJ # 90-5-1-1-10074

And as to EPA (as set forth below)

As to EPA:    OPA Enforcement Coordinator
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200, 6SF-PC
Dallas, TX 75202-2733
(214) 665-7447 (facsimile)

Amy Salinas
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200, 6RC-S
Dallas, TX 75202-2733
(214) 665-6460 (facsimile)

As to Defendant:    Michael Hennigan
Chief Executive Officer
Sunoco Pipeline L.P.
3815 West Chester Pike
Newtown Square, Pennsylvania 19073

With a copy to:    Kathleen Shea-Ballay
General Counsel
Sunoco Pipeline L.P.
3815 West Chester Pike
Newtown Square, Pennsylvania 19073

74.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

75.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.   EFFECTIVE DATE

76.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter this Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI.   RETENTION OF JURISDICTION

77.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X (Dispute Resolution) and XVII (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVII.   MODIFICATION

78.     The terms of this Consent Decree, including any attached appendices, may be modified by a subsequent written agreement signed by all Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court. Where the modification does not materially alter Defendant's obligations pursuant to this Consent Decree, it shall be effective upon the written agreement of the Parties without the consent of the Court, provided the parties first agree in writing that the modification is, in fact, non-material.  Requests for extension of time less than 180 Days to complete NDEs and PAAPs for individual Covered Facilities shall be considered minor modifications under this Consent Decree subject to the agreement of the Parties.  Such requests for extension of time shall be made

at least 30 Days prior to any deadline under this Consent Decree and in accordance with Section XIV (Notices).

79.     If any Party seeks a modification to this Consent Decree, it shall send a written notice to the other Parties in accordance with Section XIV (Notices) setting forth the requested changes and the reasons therefor. Disputes concerning modification under this Section are not subject to Section X (Dispute Resolution) of this Consent Decree. Instead, the Parties shall negotiate informally concerning the modification for a period of up to 30 Days from the date of receipt of the notice, unless that period is modified by written agreement. If at the end of the period of informal negotiations the Parties are not in agreement, the Party seeking the modification retains any rights it may have to seek modification from the Court pursuant to Federal Rule of Civil Procedure 60(b).

XVIII. TERMINATION

80.     <u>Termination of the Consent Decree.</u> After Defendant has: (1) for each Covered Facility, Like-Kind Facility, and the Sugar Land Control Room, submitted certified completion reports, in compliance with Paragraph 27.f, certifying that is has completed the requirements of Section V (Injunctive Relief), or abandonment certifications, in compliance with Paragraph 24, certifying that it has met the abandonment requirements of Section VI (Abandonment, (2) provided all reports required under Section VII (Reporting Requirements), (3) complied with all other requirements of this Consent Decree, and (4) paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

40

81.     Request for Partial Termination of the Consent Decree.  Defendant may submit up to a maximum of three Requests for Partial Termination under this Paragraph prior to seeking Termination of this Consent Decree under Paragraph 80.  Defendant may request Partial Termination by serving on the United States a written Request for Partial Termination which identifies one or more of the Covered Facilities, Like-Kind Facilities, and/or the Sugar Land Control Room as to which Defendant seeks Partial Termination and provides all necessary supporting documentation to demonstrate that each satisfies all requirements for Partial Termination specified in this Paragraph.  Before making a Request for Partial Termination, Defendant shall have satisfied the following requirements for each Covered Facility, Like-Kind Facility, and/or the Sugar Land Control Room listed in the Request for Partial Termination:

a.     Defendant shall have submitted certified completion reports, in compliance with Paragraph 27.f, certifying that it has completed the requirements of Section V (Injunctive Relief), or abandonment certifications, in compliance with Paragraph 24, certifying that it has met the abandonment requirements of Section VI (Abandonment); and

b.     Defendant shall have submitted semi-annual reports as required under Section VII (Reporting Requirements) for each Reporting Period that occurred prior to the submission of the Request for Partial Termination.

If EPA approves a Request for Partial Termination pursuant to this Paragraph, all requirements of this Consent Decree shall be terminated with respect to the Covered Facilities, Like-Kind Facilities, and/or the Sugar Land Control Room listed in the approved Request for Partial Termination.

82.   _Partial Termination Pursuant to Transfer in Compliance with Paragraph 4.a._   If

Defendant transfers a Covered Facility, Like-Kind Facility, or the Sugar Land Control Room in

compliance with Subparagraph 4.a, then Defendant's transfer of such Covered Facility, Like-

Kind Facility, or the Sugar Land Control Room shall terminate all requirements of this Decree

with respect the transferred Covered Facility, Like-Kind Facility, or the Sugar Land Control

Room.

83.   Following receipt by the United States of Defendant's Request for Termination or

Request for Partial Termination, the Parties shall confer informally concerning the Request and

any disagreement that the Parties may have as to whether Defendant has satisfactorily complied

with the requirements for termination of all or part of this Consent Decree, as applicable.  If the

United States agrees that this Decree may be terminated (or partially terminated), the Parties

shall submit, for the Court's approval, a joint stipulation terminating (or partially terminating, as

applicable) this Decree.  If the United States does not agree that this Decree may be terminated

or partially terminated, Defendant may invoke Dispute Resolution under Section X (Dispute

Resolution).  However, Defendant shall not seek Dispute Resolution of any dispute regarding

termination or partial termination until 60 Days after service of its Request for Termination or

Partial Termination, as applicable.

## XIX.   PUBLIC PARTICIPATION

84.   This Consent Decree shall be lodged with the Court for a period of not less than

30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States

reserves the right to withdraw or withhold its consent if the comments regarding this Consent

Decree disclose facts or considerations indicating that this Consent Decree is inappropriate,

improper, or inadequate.  Defendant consents to entry of this Consent Decree without further

42

notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of this Decree, unless the United States has notified Defendant in writing that it no longer supports entry of this Decree.

## XX.   SIGNATORIES/SERVICE

85.     Each undersigned representative of Defendant and the Deputy Section Chief for the Environmental Enforcement Section of the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

86.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI.   INTEGRATION

87.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables and reports that are subsequently submitted under Sections V (Injunctive Relief), VI (Abandonment), and VII (Reporting Requirements) of this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXII.  APPENDICES

88.     The following Appendices are attached to and part of this Consent Decree:

       a.      "Appendix A" is Defendant's Covered Facilities in *United States v. Sunoco Pipeline L.P.*; and

       b.      "Appendix B" is the Certified Completion Report for the Injunctive Relief in the Consent Decree in *United States v. Sunoco Pipeline L.P.*

## XXIII. FINAL JUDGMENT

89.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

Dated and entered this 13ᵗʰ day of  October , 2016

_____

UNITED STATES DISTRICT JUDGE

44

FOR THE UNITED STATES OF AMERICA:

7/5/16
Date

NATHANIEL DOUGLAS
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

ROBYN HANSON, Attorney-in-Charge
Trial Attorney
N.Y. Bar No. 4462339
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Telephone: (303) 844-1558
Fax: (303) 844-1350

PAULO PALUGOD
Special Assistant and Counsel
N.Y. Bar No. 5047964
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

FOR THE UNITED STATES ATTORNEY'S OFFICE
FOR THE SOUTHERN DISTRICT OF TEXAS:

_____
KENNETH MAGIDSON
United States Attorney
Southern District of Texas


_____
KEITH EDWARD WYATT
Assistant United States Attorney
Texas Bar No. 22092900
Federal Bar No. 3480
1000 Louisiana St., Suite 2300
Houston, TX 77002
Telephone: (713) 567-9713
Fax: (713) 718-3303

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY, REGION 6:

_____
RON CURRY
Regional Administrator
U.S. Environmental Protection Agency, Region 6

_____
AMY SALINAS
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
Office of Regional Counsel

47

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY, HEADQUARTERS:


SUSAN SHINKMAN
Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460


MARK POLLINS
Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency


KELLY ANN K. BRANTNER
Attorney Advisor
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

48

FOR DEFENDANT, SUNOCO PIPELINE L.P:

By: Sunoco Logistics Partners Operations GP
LLC, its general partner

6/17/16
Date

Name: D R CHALSON

Title: President & CEO

**Appendix A: Defendant's Covered Facilities in *United States v. Sunoco Pipeline L.P.***

Defendant's Covered Facilities in Texas

1. Barbers Hill
2. Breckenridge
3. Clairemont
4. Corsicana
5. Goodrich Station
6. Grissom
7. Hawley
8. Hearne (Sun)
9. Hull
10. Jameson
11. King
12. Liberty Station
13. Magnolia
14. Merten
15. Orange Station
16. Ringgold
17. Robert Lee
18. Saratoga
19. Seabreeze
20. Snyder
21. Sour Lake
22. Southbend
23. Suggs
24. Texoma
25. Thomas
26. Tye
27. Willis
28. Wynnewood

Defendant's Covered Facilities in Oklahoma

1. Allen
2. Bad Creek
3. Barnsdall
4. Beggs
5. Bottleman
6. Bristow
7. Burkey
8. Cromwell
9. Cully B
10. Cushing - LTF
11. Davis
12. Dover
13. Drumright
14. Enid
15. Eola
16. Harjo
17. Lindsey
18. Maysville
19. Morris
20. Oklahoma City aka (Noble)
21. Orlando
22. Ramsey
23. Ringwood
24. Schenk
25. Seminole
26. Velma
27. Waukomis
28. Wide Awake

## Appendix B:  Certified Completion Report for the Injunctive Relief
## in the Consent Decree in *United States v. Sunoco Pipeline L.P.*[1]

I _____ [name], _____ [title], in
the _____ [department/office], certify under penalty of law that
this document and all attachments were prepared under my direction or supervision in
accordance with a system designed to assure that qualified personnel properly gather and
evaluate the information submitted.  Based on my inquiry of the person or persons who manage
the system, or those persons directly responsible for gathering the information, the information
submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware
that there are significant penalties for submitting false information, including the possibility of
fine and imprisonment for knowing violations.

For the _____ Covered Facility / Like-Kind Facility / Sugar Land
Control Room[2] [please select one], located in _____ [city/state],
Defendant has completed the applicable injunctive relief requirements[3] in Section V of the
Consent Decree in *United States v. Sunoco Pipeline L.P.*, with the objective of preventing future
unauthorized discharges of crude oil from Defendant's Pipelines in violation of the CWA, as
follows:

    A.  Internal Corrosion

The requirements of this subsection are ☐ Applicable to this Certification ☐ Not applicable to
this Certification [complete below if applicable]

    ☐  Pursuant to Paragraph 13 of the Consent Decree[4], Defendant has completed at
       _____ Facility/Like-Kind Facility [select one], the
       following non-destructive examinations (NDEs) _____

       [attach pages if needed] on In-Station Piping on a spot basis consistent with Applicable
       Industry Standards to evaluate the risk of internal corrosion.  Defendant completed all
       NDEs for this Facility on _____ [date(s)].

    ☐  Pursuant to Paragraph 13.a of the Consent Decree, for purposes of applying the NDEs to
       In-Station Piping in this Facility, Defendant has at a minimum and consistent with
       Applicable Industry Standards, considered the following criteria: proximity to Waters of
       the U.S., Line Pipe elevation and/or grade, Line Pipe wall thickness, susceptibility to

---

[1] This certified completion report form is intended by the Parties to be a guide for completion of the injunctive relief
requirements of the Consent Decree and is not intended to be in limitation of the rights of the Parties provided by the
Consent Decree, including but not limited to the Force Majeure and Modification Sections.
[2] All capitalized terms are defined terms used in the Consent Decree and can be found in the Definitions Section at
Paragraph 7 of the Consent Decree.
[3] For each Covered Facilities and Like-Kind Facilities, the applicable injunctive relief requirements are listed in
Sections A and B of this certified completion report.  For the Sugar Land Control Room, the applicable injunctive
relief requirements are listed in Section C of this certified completion report.
[4] All Paragraph references are to the Paragraph numbers in the Consent Decree.

internal corrosion evidenced by any historical accidents or releases, topography, and/or the size of the facility.

☐ Pursuant to Paragraph 13.b of the Consent Decree, for purposes of applying the NDEs to In-Station Piping in this Facility, Defendant identified and prioritized In-Station Piping and developed a priority schedule by which it conducted NDEs based on the risk priority assigned by Defendant.

☐ Pursuant to Paragraph 13.c of the Consent Decree, Defendant has used in this Facility one or more of the NDE techniques under the definition for NDE in Section III of the Consent Decree. Defendant has not used visual inspection as the sole NDE technique applied at any one point on Line Pipe tested to assess the condition of In-Station Piping at this Facility.

☐ Pursuant to Paragraph 14, developed a written post-assessment action plan (PAAP) on _____ [date] for this Facility consistent with Applicable Industry Standards.

☐ Pursuant to Paragraph 14.a, Defendant's PAAP for this Facility has addressed any identified internal corrosion risks to In-Station Piping at each Facility consistent with Applicable Industry Standards, based on the results of the NDEs for such Facility.

☐ Pursuant to Paragraph 14.b, Defendant's PAAP for this Facility, consistent with Applicable Industry Standards, includes:

   ☐ A summary of the NDE results indicating the spot location tested, specifying the NDE technique(s) that were applied at each location in this Facility, and describing the remaining wall thickness and strength in that location of this Facility;

   ☐ A description of whether corrective action is needed to prevent pipeline ruptures caused by internal corrosion at each location tested, including whether Defendant determines that repairs or replacements of Line Pipe are needed within this Facility; mitigation, inhibitors, or other internal corrosion prevention measures are needed to reduce internal corrosion of Line Pipe within this Facility; and/or continued monitoring and an inspection schedule is needed to monitor the In-Station Piping for further internal corrosion and/or evaluate the effectiveness of any mitigation, inhibitors, or other internal corrosion prevention measures Defendant may implement; and

   ☐ A schedule for implementation of the corrective action measures identified in Paragraph 14.b(2), consistent with Applicable Industry Standards and based on Defendant's risk-based prioritization of the necessary corrective action.

☐ Pursuant to Paragraph 14.c, Defendant's PAAP for this Facility was completed within 60 Days of completion of the NDEs at this Facility.

B.  Dead-Leg Piping Applicable to Covered Facility and Like-Kind Facility

The requirements of this subsection are ☐ Applicable to this Certification ☐ Not applicable to this Certification [complete below if applicable]

☐ Pursuant to Paragraph 18, Defendant has implemented its Dead-Leg Removal and Line Flushing Program at this Facility in compliance with the requirements of Section V.B of the Consent Decree and consistent with Applicable Industry Standards.

☐ Pursuant to Paragraph 19, on _____ [date] Defendant updated its inventory of existing Dead-Leg Piping (Defendant's Existing Inventory of Dead-Leg Piping) at this Facility by developing field-verified diagrams of all such Line Pipe and indicating the existence of Dead-Leg Piping at this Facility to create a revised inventory of existing Dead-Leg Piping at this Facility (Defendant's Revised Inventory of Dead-Leg Piping).  Defendant's diagrams required under Paragraph 19 include:

   ☐ all existing Pipe in this Facility;

   ☐ any Dead-Leg Piping that was not previously identified in Defendant's Existing Inventory of Dead-Leg Piping, and in doing so has reviewed all maps, diagrams, and other documents in Defendant's possession, conducted interviews of relevant personnel in this Facility, reviewed physical indicia of the presence of Dead-Leg Piping in this Facility;

   ☐ either on the diagrams or in an attached document, a description of Defendant's past actions or future plans to remove any Pipe, including but not limited to, listing scheduled Dead-Leg Pipe removal actions and/or target dates for future removal actions; and

   ☐ either on the diagram itself or in an attached document, a description of Defendant's past actions or future plans to flush, purge, isolate, or otherwise maintain any Dead-Leg Piping that Defendant decides to preserve for future use, rather than remove, including but not limited to listing scheduled actions, target dates, and frequency intervals of planned ongoing actions to maintain such Line Pipe.

☐ Pursuant to Paragraph 19, Defendant's Revised Inventory of Dead-Leg Piping for this Facility was submitted to EPA on _____ [date].

C.  Sugar Land Control Room Procedures

The requirements of this subsection are ☐ Applicable to this Certification ☐ Not applicable to this Certification [complete below if applicable]

☐ Pursuant to Paragraph 22.a, on _____ [date] Defendant provided to EPA a one-time certification that all Employees who work in its Sugar Land Control Room have completed all PHMSA training and Defendant's control room management (CRM) training.

☐ Pursuant to Paragraph 22.b, on _____ [date], Defendant provided to EPA a one-time certification that:

    ☐ summarized the measures undertaken by Defendant to transfer and/or exchange knowledge and/or procedures learned by control room operators at Defendant's other control room(s) to control room operators at the Sugar Land Control Room;

    ☐ confirmed that all operators in the Sugar Land Control Room have been trained and tested on LeakWarn; and

    ☐ confirmed that Defendant's knowledge, experience, training, and processes developed from implementing LeakWarn at other control room(s) prior to the Effective Date of this Consent Decree has been shared with control room operators at the Sugar Land Control Room

☐ Pursuant to Paragraph 22.c, on _____ [date] Defendant provided to EPA a one-time final report that summarizes Defendant's response to the PPG Report's recommendations, including listing which recommendations it accepted and how it acted on them, and which recommendations it decided not to accept and why Defendant deemed acting on the recommendations unnecessary.

☐ Pursuant to Paragraph 22.d, on _____ [date] Pipeline Performance Group (PPG) (or its approved substitute) conducted a one-time supplemental assessment of Defendant's Sugar Land Control Room alarm threshold leak detection limits, and issued a Supplemental Report ("Supplemental Report") describing its assessment and reasoning for the threshold leak detection limits.

☐ Pursuant to Paragraph 22.e, on _____ [date] Defendant provided to EPA a report that summarizes Defendant's response to the Supplemental Report's recommendations, including listing which recommendations it accepted and how it acted on them, and which recommendations it decided not to accept and why Defendant deemed the recommendations unnecessary.

_____  
Date

_____  
**Sunoco Pipeline L.P.**  
By: Sunoco Logistics Partners Operations GP LLC, its general partner

Name: _____  
Title: _____